IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OTSUKA PHARMACEUTICAL CO., LTD. AND H. LUNDBECK A/S, <br><br> Plaintiffs, <br><br> v. <br><br> PRINSTON PHARMACEUTICAL INC., <br><br> Defendant. | Civil Action No. 1:19-cv-01956-LPS |

**DEFENDANT PRINSTON PHARMACEUTICAL, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Prinston Pharmaceutical Inc. ("Prinston") moves for judgment on the pleadings of non-infringement of U.S. Patent 10,307,419 ("the '419 patent"). Prinston's proposed brexpiprazole product formulation, as disclosed in its ANDA, does not infringe the claims of the '419 patent literally or under the doctrine of equivalents, because: (a) it does not meet each and every limitation of any claim of the '419 patent, and (b) the plaintiffs are foreclosed from applying the doctrine of equivalents due to both the disclosure/dedication rule and prosecution history estoppel. Consequently, judgment of non-infringement of the '419 patent in favor of Prinston is appropriate, even at this early stage prior to discovery, because nothing in discovery will change the facts that (1) there is no literal infringement, and (2) the disclosure/dedication rule and prosecution history estoppel foreclose application of the doctrine of equivalents.

I.    **BACKGROUND**

Otsuka Pharmaceutical Co., Ltd. ("Otsuka") and H. Lundbeck A/S ("Lundbeck"; collectively, "Plaintiffs") sued Prinston on October 15, 2019. (D.I. 1), asserting claims of infringement of five

1

patents, including the '419 patent. (D.I. 1, Ex. G (the '419 patent)). The '419 patent issued with seven claims. (*Id.* at cols. 15-16 (claims)). Claims 1 and 6 are independent. Claim 1 is representative and is reproduced below, with emphasis added.

> 1. A tablet comprising 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof as an active ingredient, an excipient (a), **a binder (b)**, a disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises:
>
> 0.05 to 25% by weight of 7-[4-(4-benzo[b]thiophen-4-yl-piperazin-1-yl)butoxy]-1H-quinolin-2-one or a salt thereof,
>
> 10 to 98.5% by weight of the excipient (a), which is at least one member selected from the group consisting of lactose, corn starch, and microcrystalline cellulose;
>
> 0.1 to 20% by weight of **the binder (b),** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;
>
> 1 to 25% by weight of the disintegrant (c), which is at least one member selected from the group consisting of low-substituted hydroxypropyl cellulose, croscarmellose sodium, and sodium carboxymethyl starch;
>
> and 0.1 to 10% by weight of the lubricant (d), which is magnesium stearate;
>
> wherein said coating comprises hydroxypropyl methylcellulose, talc, and a colorant (e), the colorant (e) is present in an amount ranging from 0.1 to 50% by weight of the coating and comprises iron oxide and titanium oxide, and the coating substantially does not contain polyethylene glycol.

Independent claim 6 contains the identical limitation of binder (b) being "hydroxypropyl cellulose." To avoid confusion and to clarity, both independent claims 1 and 6 claim a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

> The specification of the '419 patent contains the following description of the binder (b):
>
> Examples of the binder (b) include sucrose; white soft sugar; pregelatinized starch; partially pregelatinized starch; ▮▮▮▮▮▮ ▮ ▮ ▮▮▮▮▮▮ ▮▮▮▮ ▮ ▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ other polysaccharides such as acacia, powdered acacia, agar, powdered agar, guar gum, tragacanth, powdered tragacanth, pullulan, and pectin; acrylic acid based polymer such as methacrylic

>acid copolymer L, methacrylic acid copolymer LD, methacrylic acid copolymer S, ethyl acrylate-methyl methacrylate copolymer dispersion, aminoalkyl methacrylate copolymer E, and aminoalkyl methacrylate copolymer RS; sodium alginate; purified gelatin; hydrolyzed gelatin powder; carboxyvinyl polymer; copolyvidone; povidone; polyvinyl alcohol. These binders (b) may be used singly or in a combination of two or more. Among these, a cellulose derivative is preferable, and hydroxypropyl cellulose is more preferable. It should be noted that, when povidone is contained as a binder (b), the obtained tablet tends to have reduced photostability and storage stability. Therefore, it is more preferable if this component is substantially not contained.

(*Id.*at col. 4, lines 33-58 (emphasis added)).

Notably, the '419 patent expires years after the other patents asserted in this litigation, and is the only patent directed to specific formulations with specific obvious excipients. The other patents-in-suit are directed to the active pharmaceutical ingredient brexpiprazole, with any formulation claims being broad and not claiming specific excipients.

Prinston filed an Abbreviated New Drug Application (ANDA) with the FDA to obtain approval for its brexpiprazole tablet product. Prinston's proposed brexpiprazole product contains a binder, which is ███████████████████████████████████ There is no dispute that Prinston's formulation contains this binder. Prinston's formulation from its ANDA is attached as Exhibit 1.[1]

## II.   LEGAL STANDARDS

### A.  Motion for Judgment on the Pleadings – F.R.Civ.P. 12(c)

Judgment on the pleadings should be granted only if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Biogen Int'l GmbH v. Banner Life Scis. LLC*, 424 F. Supp. 3d 303, 307 (D. Del. 2020) (Stark, J.) (granting Rule 12(c) motion). This motion demonstrates that there is no: (1) literal infringement as matter of law; and (2) no infringement under the doctrine of equivalents (DOE) for two

---

[1] Exhibit references refer to exhibits to the Declaration of Brent Batzer, filed concurrently.

independent reasons. The first reason is that DOE is precluded under the "disclosure-dedication" doctrine and second under prosecution history estoppel. "Application of the disclosure-dedication doctrine presents a question of law suitable for resolution on a motion for judgment on the pleadings." *Eagle Pharm., Inc. v. Slayback Pharma LLC*, ("*Eagle* I") 382 F. Supp. 3d 341, 343-44 (D. Del. 2019) (Connolly, J.) aff'd *Eagle Pharm. Inc. v. Slayback Pharma LLC,* ("*Eagle* II") 958 F.3d 1171 (Fed. Cir. 2020). Likewise, considering prosecution history estoppel on a motion to dismiss is appropriate. *See Amgen Inc. v. Coherus Biosciences, Inc.,* 2018 WL 1517689 at *4 (D. Del. March 26, 2018)

    In evaluating a motion for judgment on the pleadings, a court may consider the pleadings, exhibits attached to the pleadings, matters of public record, any documents integral to or explicitly relied upon in the pleadings, and "authentic documents upon which the complaint is based, if attached to the complaint or as an exhibit to the motion." *Biogen Int'l GmbH,* 424 F. Supp. 3d at 307. On this basis, courts in this District have recognized that asserted patents, their file histories, as well as ANDA filings are all properly before the court, regardless of the stage of litigation. *In re Bendamustine Consol. Case*s, C.A. No. 13-2046-GMS, 2015 WL 1951399, at *1 (D. Del. Apr. 29, 2015). *See also Eagle I,* 382 F. Supp. 3d at 343 n. 1 (finding Slayback's NDA integral to the pleadings because a court can consider "any documents 'integral to or explicitly relied upon' in the pleading."). When the factual allegations in a complaint contradict a document integral to the pleadings, the document controls. *See Boldrini v. Wilson*, 542 F.Appx. 152 (3rd Cir. Oct. 17, 2013); *Anderson v. Local 435 Union*, C.A. No. 12-1119, 2014 WL 4955611 at *1 (D. Del. Sept. 30, 2014).

    **B. Disclosure-Dedication Rule**

    Application of the disclosure-dedication rule is a question of law. *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005). The disclosure-dedication rule states that "when a patent drafter discloses but declines to claim subject matter . . . [that] action

dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Service Co., Inc.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002)(en banc). "[A] patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Id.* at 1055.

### C. Prosecution History Estoppel

Considering prosecution history estoppel on a motion to dismiss is appropriate. *See Amgen Inc. v. Coherus Biosciences, Inc.,* 2018 WL 1517689 at *4 (D. Del. March 26, 2018). Prosecution history estoppel presumably occurs when a patentee made a narrowing claim amendment during the course of prosecution. *Integrated Tech. Corp. v. Rudolph Techs., Inc.,* 734 F.3d 1352, 1356-57 (Fed. Cir. 2013). "Prosecution history estoppel can extend from a parent application to subsequent patents in the same lineage." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013).

### III. ARGUMENT

#### A. Prinston Does Not Literally Infringe the '419 Patent

Both independent claims of the '419 patent cover, in pertinent part, a brexpiprazole tablet having an excipient (a), a binder (b), a disintegrant (c), a lubricant (d), and a coating, wherein the uncoated tablet comprises a "binder (b), which is hydroxypropyl cellulose." (D.I. 1 Ex. G (the '419 patent), at cols. 15-16 (Claims 1 and 6)). This language is clear on its face and no claim construction is necessary.

Plaintiffs allege that Prinston's proposed brexpiprazole product described in its ANDA infringes these claims. (*See, e.g.,* D.I. 1, at ¶¶ 49, 110). It is undisputed that the binder in Prinston's proposed product is not hydroxypropyl cellulose. Instead, it is undisputed that the Prinston proposed brexpiprazole product contains ████████████████████████. (Exh. 1, at 4

5

(Table showing formulation)). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Thus, there is no factual dispute, the claim limitation of "a binder, which is hydroxypropyl cellulose" is not literally met by the Prinston proposed product. And because there is no literal infringement as a matter of law of independent claims 1 and 6, it necessarily follows that the narrower claims that depend from that independent claim cannot be infringed either. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). Thus, no claim of the '419 patent is literally infringed.

### B. Application of the Doctrine of Equivalents to Prinston's Formulation is Foreclosed as a Matter of Law by the Disclosure-Dedication Rule

"[W]hen a patent drafter discloses but declines to claim subject matter . . . [that] action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assocs., Inc.*, 285 F.3d at 1054. The patent disclosure must be sufficiently specific to permit a person of ordinary skill in the art to identify the unclaimed subject matter for the disclosure-dedication rule to apply. *Pfizer, Inc.*, 285 F.3d at 1378-79 (quoting *PSC Computer Prods., Inc. v Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir 2004)). Here, the requisite specificity is present. The '419 patent expressly discloses ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (*supra* at 2-3, quoting the '419 patent specification, at col. 4, lines 33-58). The patentee identified specific binders that can be used as alternatives to hydroxypropyl cellulose, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, *but* then claimed only one specific binder, hydroxypropyl cellulose. Accordingly, because of the disclosure-dedication rule, as a matter of law Prinston's proposed ANDA products cannot infringe the '419 patent claims under the doctrine of equivalents. *Johnson & Johnston Assoc., Inc.,* 285 F.3d at 1055; *see also Eagle II,* 958 F.3d at 1177 (finding that the disclosure-dedication doctrine bars application of the doctrine of equivalents because "the asserted patents dedicated ethanol to the public by disclosing, but not claiming, ethanol as an alternative to PG in the 'pharmaceutically acceptable solvent' claim limitation") and *In re Bendamustine Consol. Case*s, 2015 WL 1951399, at *2 ("By claiming only TBA from among the listed organic solvents, the patentee effectively disclaimed the

6

remaining solvents in the list and cannot employ the doctrine of equivalents to bring them back within the scope of the '190 and '863 patents.")

### C. Application of the Doctrine of Equivalents is Also Foreclosed by Prosecution History Estoppel

The application that led to the '419 patent was filed on September 22, 2017, but claims priority through a string of continuation applications to U.S. Application No. 14/351,325 filed on Oct. 12, 2012 (the '325 application). (D.I. 1 Exh. G (the '419 patent), at face page, field (63)).  The prosecution history of the '325 application is part of the prosecution history of the '419 patent. *See Trading Techs. Int'l, Inc.* 728 F.3d at 1323 (Fed. Cir. 2013) ("Prosecution history estoppel can extend from a parent application to subsequent patents in the same lineage.").

As originally filed, the claims of the '325 application broadly covered a binder that was a "cellulose derivative." (Exhibit 2 at 35 (April 11, 2014 Transmittal of U.S. Pat. App. No. 14/351,325) (highlighting added)). Following a rejection, the applicants cancelled those claims in favor of claims reciting only hydroxypropyl cellulose as the binder. (Exhibit 3 at 3 *(*August 3, 2015, Response to Non-Final Office Action, Pat. App. No. 14/351,325*)*. The applicants further emphasized, "[t]here are unexpected benefits from the claims composition with hydroxypropyl cellulose as the binder." (*Id.* at 9*)*. The applicant reiterated this argument during prosecution of the '419 patent. (Exhibit 4 at 6 (April 3, 2018, Response to Non-Final Office Action, '419 patent)). The narrowing amendment, which was then emphasized during patent prosecution, makes clear that anything other than hydroxypropyl cellulose is outside the scope of the '419 patent claims. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734, 736-37 (2002); *Integrated Tech. Corp.*, 734 F.3d at 1358 ("we hold that ITC surrendered the territory between the original and issued claims, including the equivalent"). Indeed, the original claim scope would have encompassed ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■, while the amended claim scope does not. Prinston's ANDA product cannot now be recaptured using the doctrine of equivalents.

7

Thus, in addition to the disclosure-dedication rule, prosecution history estoppel separately and independently bars application of the doctrine of equivalents to Prinston's ANDA product, and Prinston cannot infringe the '419 patent as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, Prinston respectfully requests that this Court grant Prinston judgment of non-infringement of the '419 patent on the pleadings under F.R.Civ.P. 12(c).

Dated: July 6, 2020

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540 – Ext.1
stamoulis@swdelaw.com

Shashank Upadhye (*pro hac vice*)
Yixin Tang (*pro hac vice*)
Brent Batzer (*pro hac vice*)
**UPADHYE CWIK LLP**
135 S. LaSalle St., Suite 1930
Chicago, IL 60606
Tel: 312.598.2610
shashank@ipfdalaw.com

*Attorneys for Defendants*