# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

OTSUKA PHARMACEUTICAL CO., LTD. )
AND H. LUNDBECK A/S, )
    )   **REDACTED - PUBLIC VERSION**
    )
    Plaintiffs, )
    )   C.A. No. 19-1956-LPS
    )
    v. )
    )
PRINSTON PHARMACEUTICAL INC., )
    )
    Defendant. )
    )
    )

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO PRINSTON PHARMACEUTICAL, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Of Counsel:*

James B. Monroe
Denise Main
Erin M. Sommers
C. Collette Corser
Tyler B. Latcham
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4431
(202) 408-4000

Dated:  July 27, 2020

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiffs Otsuka Pharmaceutical
Co., Ltd. and H. Lundbeck A/S*

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.     ARGUMENT ...................................................................................................................... 2

        A.      The Court Should Not Abandon Its Practice of Disfavoring Dispositive
                Motions ................................................................................................................... 2

        B.      Prinston Has Not Established That It Is Entitled to the Relief It Seeks ................. 3

                1.      Prinston's 12(c) Motion Impermissibly Relies on "Matters Outside
                        the Pleadings" ............................................................................................. 3

                2.      Factual Disputes Exist as to Literal Infringement ...................................... 6

                3.      Prinston's Disclosure-Dedication Argument Is Legally and
                        Factually Incorrect and Raises Disputed Issues of Material Fact .............. 8

                4.      Prinston's Prosecution History Estoppel Arguments Are Legally
                        Insufficient and Raise Disputed Issues of Material Fact ......................... 10

III.    Conclusion ....................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                 **Page(s)**

*Amgen Inc. v. Alkem Labs. Ltd.*,
  No. 17-CV-815, 2017 WL 6493150 (D. Del. Dec. 19, 2017) ..........................................12, 15

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*,
  222 F. Supp. 2d 423 (S.D.N.Y. 2002)........................................................................................7

*In re Bendamustine Consol. Cases*,
  No. 13-2046, 2015 WL 1951399 (D. Del. Apr. 29, 2015)...................................................5, 10

*Bial-Portela & CA., S.A. v. Torrent Pharms. Ltd.*,
  No. 18-279 (D. Del. May 20, 2020)...........................................................................................2

*Biogen Int'l GmbH v. Banner Life Sci. LLC*,
  424 F. Supp. 3d 303 (D. Del. 2020)...........................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)....................................................................................................4

*Cima Labs, Inc. v. Actavis Grp. HF*,
  No. 07-893, 2007 WL 1672229 (D.N.J. June 7, 2007)...................................................3, 4, 6

*Comp. Docking Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008)...............................................................................................15

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006)...............................................................................................14

*Corcept Therapeutics, Inc. v. Teva Pharms. USA, Inc.*,
  No. 18-3632, 2018 WL 5263278 (D.N.J. Oct. 23, 2018) ..........................................................3

*Cordis Corp. v. Medtronic Ave, Inc.*,
  511 F.3d 1157 (Fed. Cir. 2008)...............................................................................................14

*Eagle Pharms., Inc. v. Slayback Pharma LLC*,
  382 F. Supp. 3d 341 (D. Del. 2019)......................................................................................4, 5

*Eagle Pharms. Inc. v. Slayback Pharma LLC*,
  958 F.3d 1171 (Fed. Cir. 2020)...............................................................................................10

*Eli Lilly & Co. v. Hospira, Inc.*,
  933 F.3d 1320 (Fed. Cir. 2019)...........................................................................................13, 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003)...........................................................................................12, 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)...................................................................................................11, 13

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996).....................................................................................14, 15

*Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*,
    906 F.2d 698 (Fed. Cir. 1990).............................................................................................13

*Kyowa Hakko Bio, Co. v. Ajinomoto Co.*,
    No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018)................................................11, 14, 15

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).............................................................................................................3

*Liqui-Box Corp. v. Scholle IPN Corp.*,
    No. 19-cv-4069, 2020 WL 1491144 (N.D. Ill. Mar. 27, 2020) ........................................14, 15

*Lupin Atlantis Holdings v. Ranbaxy Labs., Ltd.*,
    No. 10-3897, 2011 WL 1540199 (E.D. Pa. Apr. 21, 2011)................................................5, 6, 7

*Novartis AG v. Ezra Ventures, LLC*,
    No. 15-150-LPS, 2016 WL 5334464 (D. Del. Sept. 22, 2016) .............................................15

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003).........................................................................................15

*Par Pharm., Inc. v. Hospira, Inc.*,
    No. 17-944, 2018 WL 3343238 (D. Del. May 11, 2018) ............................................. *passim*

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005).........................................................................................8, 9

*PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*,
    355 F.3d 1353 (Fed. Cir. 2004).....................................................................................8, 9, 10

*Recro Gainesville LLC v. Actavis Labs. FL, Inc.*,
    No. 14-1118, 2017 WL 1064883 (D. Del. Feb. 24, 2017).......................................................9

*Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008).........................................................................................14

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008)............................................................................................6, 7, 8

*Roxane Labs., Inc. v. Camber Pharms. Inc.*,
    No. 14-4042, 2015 WL 12838313 (D.N.J. Apr. 29, 2015).......................................................6

*Silvergate Pharms., Inc. v. BionPharma Inc.*,
　No. 18-1962-LPS, D.I. 97 (D. Del. May 6, 2020) ....................................................2

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
　728 F.3d 1309 (Fed. Cir. 2013)........................................................................11

*Tristar Prods., Inc. v. Nat'l Express, Inc.*,
　No. 13-7752, D.I. 152 (D.N.J. Aug. 17, 2017) ..................................................2

*Wi-Lan USA, Inc. v. LG Elecs., Inc.*,
　No. 13-4895, D.I. 129 (D.N.J. Nov. 8, 2013) ...................................................3

## Rules

Fed. R. Civ. P. 12(c) ........................................................................... *passim*

Fed. R. Civ. P. 12(d) .............................................................................3, 6

Fed. R. Civ. P. 16(c)(2)(P)........................................................................3

Plaintiffs respectfully submit that this Court should deny Prinston's Rule 12(c) motion (D.I. 15). By failing to seek the Court's leave to file its motion, Prinston has not only circumvented this Court's typical practice of declining to consider dispositive motions in Hatch-Waxman cases, but it has also put before the Court a motion that—even if successful—will not end this litigation. U.S. Patent No. 10,307,419 is just one of five patents asserted against Prinston. Moreover, Prinston's motion is not limited to the pleadings, cannot be resolved as a matter of law and itself raises several disputed issues of material fact. Entertaining Prinston's motion at this early stage— without the benefit of a fully developed record—will unnecessarily waste the Court's and the parties' resources.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This patent infringement action arises from Prinston's filing of Abbreviated New Drug Application ("ANDA") No. 213587 with the U.S. Food and Drug Administration ("FDA") seeking approval to market a generic version of Plaintiffs' Rexulti® product that is the subject of New Drug Application ("NDA") No. 205422. Rexulti® contains brexpiprazole and is marketed as an atypical antipsychotic indicated for the treatment of schizophrenia and for use as an adjunctive therapy to antidepressants for the treatment of major depressive disorder. Prinston is one of eighteen defendant groups currently seeking approval to market generic versions of Rexulti®. Plaintiffs have asserted infringement in these related cases, including against Prinston, of United States Patent Nos. 7,888,362 ("the '362 patent"); 8,349,840 ("the '840 patent"); 8,618,109 ("the '109 patent"); 9,839,637 ("the '637 patent"); and 10,307,419 ("the '419 patent"). The '419 patent relates to a tablet form of brexpiprazole.

Plaintiffs filed this action on October 15, 2019, in response to Prinston's Paragraph IV Notice Letter. D.I. 1. Prinston filed its Answer on March 16, 2020. D.I. 10.

To date, Prinston has not produced its ANDA and has ignored Plaintiffs' October 4, 2019 request for access to Prinston's ANDA. Its motion marks the first time Plaintiffs have been provided with information regarding the alleged contents of Prinston's generic products.

No Scheduling Order has been entered in this litigation or any of the other seventeen related cases. The regulatory stay precluding FDA approval of Prinston's ANDA does not expire until January 10, 2023. D.I. 3.

## II.     ARGUMENT

### A.      The Court Should Not Abandon Its Practice of Disfavoring Dispositive Motions

Prinston provides no compelling reason to deviate from this Court's long-standing practice of not entertaining dispositive motions in Hatch-Waxman cases. Prinston's motion for judgment on the pleadings will not end this litigation. Plaintiffs have asserted four other patents against Prinston for which it has not identified any non-infringement positions. A ruling for Prinston also will not eliminate the Court's consideration of infringement of the claims of the '419 patent in the seventeen other related litigations. Prinston's motion is thus inefficient and unduly burdens this Court and the parties, especially here, where Prinston has asserted no prejudice were the Court to deny its motion. Plaintiffs therefore urge this Court to exercise its discretion and deny Prinston's motion for these reasons alone. *See Bial-Portela & CA., S.A. v. Torrent Pharms. Ltd.*, No. 18-279 (D. Del. May 20, 2020) (oral order denying ANDA-defendant's leave to file a Rule 12(c) motion based on the disclosure-dedication doctrine); *Silvergate Pharms., Inc. v. BionPharma Inc.*, No. 18-1962-LPS, D.I. 97 (D. Del. May 6, 2020) (oral order denying ANDA-defendant's leave to file a dispositive motion); *Tristar Prods., Inc. v. Nat'l Express, Inc.*, No. 13-7752, D.I. 152 at 4 (D.N.J.

Aug. 17, 2017) (Ex. 1)[1] (quoting Fed. R. Civ. P. 16(c)(2)(P)) (noting courts have "substantial discretion to manage the timing and sequence of motion practice" to facilitate the "just, speedy, and inexpensive disposition" of their cases); *see also Wi-Lan USA, Inc. v. LG Elecs., Inc*., No. 13-4895, D.I. 129 at 1 (D.N.J. Nov. 8, 2013) (Ex. 2) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936)) (noting that courts have an "inherent power to control the[ir] docket and preserve judicial economy").

### B.     Prinston Has Not Established That It Is Entitled to the Relief It Seeks

####       1.      Prinston's 12(c) Motion Impermissibly Relies on "Matters Outside the Pleadings"

Prinston relies on several "matters outside the pleadings" in violation of Federal Rule of Civil Procedure 12(d).  For this reason alone, its motion should be denied.  This Court and other courts within the Third Circuit have consistently declined to consider defendants' ANDAs in the context of motions to dismiss and motions for judgment on the pleadings when references in the complaint were "limited to the fact of the ANDA's filing and to summarize its contents as described in the Paragraph IV notice letter."  *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944, 2018 WL 3343238, at *2 (D. Del. May 11, 2018); *see also Corcept Therapeutics, Inc. v. Teva Pharms. USA, Inc.*, No. 18-3632, 2018 WL 5263278, at *3 n.3 (D.N.J. Oct. 23, 2018) ("Plaintiff neither attached [the defendant's] ANDA to the Amended Complaint nor relied on it directly.  Rather, the Amended Complaint refers to [the defendant's] notice letters . . . ."); *Cima Labs, Inc. v. Actavis Grp. HF*, No. 07-893, 2007 WL 1672229, at *4 (D.N.J. June 7, 2007) ("[A]lthough Plaintiffs refer to the ANDA in the Complaint, the reference is merely to the fact that the ANDA was filed and to describe generally the contents of the ANDA that was gleaned from the Paragraph IV Notice

---

[1] Plaintiffs' exhibits cited herein are attached to the supporting declaration of Douglas W. Cheek, which is being filed concurrently herewith.

Letter."). This policy ensures that a plaintiff is afforded proper notice of a defendant's allegations and of the documents upon which defendants seek to rely. *See, e.g.*, *Cima*, 2007 WL 1672229, at *4 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Here, Prinston provided limited information regarding its proposed generic products and non-infringement positions with respect to the '419 patent in its Paragraph IV Notice Letter. Its Answer had no information. In response to the Complaint paragraphs alleging infringement of the '419 patent, Prinston answered with a one-word "Denied" without further elaboration. D.I. 10 at ¶¶ 110–11. Had Prinston believed that judgment on the pleadings was warranted, it could have articulated the non-infringement positions it now relies on when it answered or at the very least fully articulated its positions in its Paragraph IV Notice Letter. Instead, Prinston waited four months after filing its Answer before filing a motion, which raises several new arguments not included in its Notice Letter and is built entirely upon multiple "matters outside the pleadings," including ten pages allegedly related to its proposed generic products,[2] portions of the file history of the application leading to the '419 patent and portions of the file history of one parent application. *See, e.g.*, D.I. 16: Exs. 1–4.

Because Prinston has not produced its entire ANDA and, in fact, ignored Plaintiffs' request for access nearly a year ago, Plaintiffs' reference to Prinston's ANDA in the Complaint was necessarily "limited to the fact of the ANDA's filing and to summarize its contents as described in the Paragraph IV notice letter." *Par Pharm.*, 2018 WL 3343238, at *2. Prinston's reliance on information in its ANDA in the context of a motion for judgment on the pleadings is therefore improper. *See, e.g.*, D.I. 16: Ex. 1. Prinston's citations to *Eagle I* and *Bendamustine* do not suggest

---

[2] Plaintiffs do not concede and expressly reserve their right to seek discovery as to the identity and authenticity of the produced excerpt.

otherwise.  D.I. 15 at 4 (citing *Eagle Pharms., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 343 n.1 (D. Del. 2019) ("*Eagle I*") and *In re Bendamustine Consol. Cases*, No. 13-2046, 2015 WL 1951399, at *1 (D. Del. Apr. 29, 2015)).  The facts here are distinguishable.[3]  In *Eagle I*, the defendant appended portions of its NDA to its Answer and specifically distinguished *Par Pharm.* on that basis.[4]  Unlike the defendants in *Bendamustine*, each of which produced its ANDA before the Complaint was filed,[5] Prinston, ignoring Plaintiffs' request for access, has not produced its ANDA, and Plaintiffs do not concede the identity or authenticity of the excerpts allegedly taken from it.  *Bendamustine*, 2015 WL 1951399, at *1.

Moreover, "courts within the Third Circuit have held that [an] ANDA may not be considered for the truth of its contents at this stage of the proceedings."  *Par Pharm.*, 2018 WL 3343238, at *3; *see also Lupin Atlantis Holdings v. Ranbaxy Labs., Ltd.*, No. 10-3897, 2011 WL 1540199, at *3 (E.D. Pa. Apr. 21, 2011) ("Even if the Court does consider [the defendant's] ANDA, it cannot do so for the truth of its contents.").  "This conclusion is underscored by the fact that [Prinston] actually drafted the ANDA itself [and in this case self-selected which portions to include with its briefing]—and no judicial cynicism is required to consider that [Prinston] may

---

[3] *Biogen Int'l GmbH v. Banner Life Sci. LLC*, 424 F. Supp. 3d 303 (D. Del. 2020) is similarly inapt because the Court did not hold that either portions of ANDAs or prosecution history were reviewable in the context of a Rule 12(c) motion, and, thus, Prinston's reliance on the selected quotation is without merit.  *See* D.I. 15 at 4.

[4] *See* Answer & Counterclaims at ¶¶ 9–10, Eagle Pharms., Inc. v. Slayback Pharma LLC, No. 18-1953 (D. Del. Dec. 13, 2018) (referring to portion of NDA attached as Exhibit A to Answer); Reply Brief in Support of Motion for Judgment on the Pleadings at 3–4, Eagle Pharms., Inc. v. Slayback Pharma LLC, No. 18-1953 (D. Del. Feb. 22, 2019) (distinguishing *Par Pharm.* based on NDA attached to pleadings).

[5] *See, e.g.*, Complaint at ¶ 27, Cephalon, Inc. v. Dr. Reddy's Labs., Ltd., No. 14-334 (D. Del. Mar. 14, 2014) (noting ANDA received before complaint filing); Complaint at ¶ 26, Cephalon, Inc. v. Uman Pharma Inc., No. 14-568 (D. Del. Apr. 30, 2014) (same); Complaint at ¶ 22, Cephalon, Inc. v. InnoPharma, Inc., No. 14-590 (D. Del. Mar. 9, 2014) (same); Complaint at ¶ 43, Cephalon v. Sagent Pharms., Inc., No. 14-1116 (D. Del. Sept. 2, 2014) (same).

have done so with the specific intention of avoiding or forestalling any infringement action." *Lupin*, 2011 WL 1540199, at *3. All of Prinston's non-infringement positions rely on the ten-page excerpt attached to its Rule 12(c) motion for the truth of its contents. *See, e.g.*, D.I. 16: Ex. 1. As a result, Prinston's Rule 12(c) motion should be denied.

In addition, this Court and other courts within the Third Circuit have also consistently rejected defendants' reliance on the prosecution histories of asserted patents in the context of denying motions to dismiss and motions for judgment on the pleadings because they "fall[] outside the narrow exception for documents which may be properly considered." *Par Pharm.*, 2018 WL 3343238, at *2; *Roxane Labs., Inc. v. Camber Pharms. Inc.*, No. 14-4042, 2015 WL 12838313, at *1 (D.N.J. Apr. 29, 2015) ("Arguments based on matters outside the pleadings—such as what information the USPTO had in its possession— . . . cannot succeed."); *Cima*, 2007 WL 1672229, at *4 ("Plaintiff's response to the PTO's office action is not integral to or explicitly relied upon in the Complaint."). Accordingly, Prinston's reliance on portions of various file histories to support its Rule 12(c) motion is also improper. *See, e.g.*, D.I. 16: Exs. 2–4.

Given Prinston's reliance on these materials outside of the pleadings, Prinston's motion is better characterized as a motion for summary judgment (Fed. R. Civ. P. 12(d)), which is premature and should not be permitted.

## 2.    Factual Disputes Exist as to Literal Infringement

Plaintiffs do not concede that Prinston's proposed generic products do not literally infringe at least one claim of the '419 patent based on the limited ten-page excerpt allegedly taken from Prinston's ANDA. Literal infringement—a question of fact—cannot be resolved at the pleadings phase where there are factual disputes. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

Further, "an infringement adjudication cannot be completed merely by reviewing the ANDA [and certainly not only ten pages of it], and without taking into account any other evidence—including, most notably expert testimony." *Par Pharm.*, 2018 WL 3343238, at *3 (quoting *Lupin*, 2011 WL 1540199, at *3). Pharmaceutical tablets, like the ones Prinston seeks to market, may include other components that are not identified in the ten-page excerpt Prinston provided. Thus, a full infringement analysis, including expert analysis of the entire ANDA, product samples and development documents, is required before the issue of literal infringement can be resolved.

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 222 F. Supp. 2d 423 (S.D.N.Y. 2002) is illustrative. In *Astra*, the defendant asserted that its tablet did not infringe because it allegedly lacked the claimed "inert subcoating." *Id*. at 505. After a full infringement analysis was conducted—involving expert analysis and review of the defendant's entire ANDA—the Court determined that the defendant's manufacturing process did, in fact, result in an "inert subcoating." *Id*. at 507–08. "Had the court [in *Astra*] disposed of the case at the motion to dismiss stage, on the basis of the defendant's ANDA alone, obviously it would not have heard or considered expert testimony relating to the question of infringement in fact, and would have reached an improvident result." *Lupin*, 2011 WL 1540199, at *3 (describing the factual scenario of *Astra*).

Accordingly, additional discovery is required because the issue of literal infringement cannot be resolved "as a matter of law" based on the limited record that Prinston has self-selected. Prinston's motion should also be denied for this reason alone. *Rosenau*, 539 F.3d at 221. Moreover, ███████████████████████████████████████████████████████████████████

███████ *See* D.I. 16: Ex. 1 at 7. Similar to *Astra*, a full infringement analysis—involving expert analysis of Prinston's entire ANDA, proposed generic products and manufacturing process—

would provide more complete information regarding Prinston's core tablets relative to the coating materials it uses.

### 3. Prinston's Disclosure-Dedication Argument Is Legally and Factually Incorrect and Raises Disputed Issues of Material Fact

#### a. There Are Factual Disputes as to the Binders in Prinston's Proposed Generic Products

Prinston erroneously states that "it is undisputed that the Prinston proposed brexpiprazole product contains ███████████████████████."[6] D.I. 15 at 5 (emphasis added).  This is not "undisputed."  Prinston's proposed generic products include other components that may also act as binders, such as ██████████████.  D.I. 16: Ex. 1 at 7.[7]  The '419 patent does not identify ████████████████ as an alternative binder to HPC.  D.I. 1: Ex. G at 4:33–51.  Prinston has not (and cannot) therefore establish that the disclosure-dedication applies to at least this binder in its alleged tablets.  If Prinston asserts that ████████████████ is not a binder, it raises disputes of material fact that cannot be resolved by a Rule 12(c) motion.  *Rosenau*, 539 F.3d at 221.

#### b. Plaintiffs Dispute that the ████████████████████ and the Additional Binders Used by Prinston Are Dedicated Alternative Binders

As Prinston acknowledges (D.I. 15 at 5), to find that an alternative to what is claimed has been dedicated to the public, "the disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed."  *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005) (quoting *PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)).  The disclosure must be more than "any generic reference in a written specification" but rather must be a "clear, precise disclosure" of "explicit alternatives to the inventions claimed."  *PSC Comput.*, 355 F.3d at 1358–

---

[6] ████████████████████████████████████████████████████

[7] *E.g.*, Ex. 3 ████████.

60.  Prinston has not demonstrated that the '419 patent's generic references to ████████ ██████████████████████████████████████████████ are of such specificity that a person of ordinary skill in the art would conclude that the ████████████████████████ that Prinston purportedly uses is disclosed but not claimed in the '419 patent. *Pfizer*, 429 F.3d at 1378 (quoting *PSC Comput.*, 355 F.3d at 1360) ("This 'disclosure-dedication' rule does not mean that any generic reference in a written specification necessarily dedicates all members of that particular genus to the public.").

Plaintiffs dispute that the reference to ████████████████████████████ ██████████████████████████████████████ in a long list of "[e]xamples of the binder," many of which are themselves categories of pharmaceutical excipients, is sufficiently specific to support the conclusion that the ████████████████ used in Prinston's tablets has been dedicated to the public under the disclosure-dedication doctrine. ████████████████████████████ is available in several grades that vary widely in properties. Ex. 4. ████████████████████████████████████████████████ ████████████ *Id.* Indeed, Prinston's own ten-page excerpt distinguishes between ████████████ ██████████████████████████ D.I. 16: Ex. 1 at 8, Table 4 n.3. Prinston's arguments regarding ████████ therefore, raise clear factual issues, and discovery—particularly expert discovery—is required to determine what, if anything, a person of ordinary skill in the art would understand the general references to ████████████████████████████████ ████ to disclose. *See, e.g.*, *Recro Gainesville LLC v. Actavis Labs. FL, Inc.*, No. 14-1118, 2017 WL 1064883, at *5 (D. Del. Feb. 24, 2017) (finding no disclosure-dedication of polymer coating in light of expert testimony that "there are many thousands of [the disclosed] polymers in existence").

Further, the two cases Prinston relies upon are distinguishable.   In *Eagle II*, the specification "expressly" and "repeatedly" identified ethanol as an alternative to the claimed pharmaceutically acceptable fluid.  *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1174 (Fed. Cir. 2020) ("*Eagle II*").  Similarly, in *Bendamustine*, the specification identified several "precise" alternatives to the claimed solvent.  *Bendamustine*, 2015 WL 1951399, at *2.[8]  The general class of HPMC polymers that encompasses multiple grades with variable properties is thus unlike the single, specific solvent alternative in *Eagle II* and *Bendamustine*.

Prinston's proposed generic products also contain ██████████████████ ████████████████, both of which are binders.  D.I. 16: Ex. 1 at 4.[9]  The general statement contained in the '419 patent that "[t]hese binders . . . may be used singly or in combination of two or more" is similarly not sufficiently specific to support the conclusion that combinations of ██████████████████ have been dedicated to the public under the disclosure-dedication doctrine.  D.I. 1: Ex. G at 51–52.  Without a "clear" and "precise" disclosure," the disclosure-dedication doctrine does not apply to ████████████████ ██████████████████  *See PSC Comput.*, 355 F.3d at 1358–60.

#### 4.   Prinston's Prosecution History Estoppel Arguments Are Legally Insufficient and Raise Disputed Issues of Material Fact

At a minimum, Prinston has not established that either amendment-based or argument-based prosecution history estoppel applies to ██████████████████,

---

[8] In *Bendamustine*, the Court did not disclose the alternative solvent or solvents used by the Moving Defendants.  However, the specification unambiguously identified 21 alternative solvents, including: tertiary butanol, n-propanol, n-butanol, isopropanol, ethanol, methanol, acetone, ethyl acetate, dimethyl carbonate, acetonitrile, dichloromethane, methyl ethyl ketone, methyl isobutyl ketone, 1-pentanol, methyl acetate, carbon tetrachloride, dimethyl sulfoxide, hexafluoroacetone, chlorobutanol, dimethyl sulfone, acetic acid and cyclohexane.  *Bendamustine*, 2015 WL 1951399, at *2.

[9] *E.g.*, Ex. 5 ████; Ex. 6 ████.

██████████████████████ as alternative binders.  Prinston's arguments relate solely to claims that "covered a binder that was a 'cellulose derivative.'"  D.I. 15 at 7.  ████████████ ████████████████ are not cellulose derivatives, and thus cannot be within the scope of any alleged surrender.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002) ("*Festo I*").  For this reason alone, Prinston's prosecution history arguments are without merit.

Prinston has also not demonstrated prosecution history estoppel as to ████████ in its proposed generic products.  Indeed, its prosecution history estoppel arguments raise factual disputes that must be decided only after the record has been fully developed with fact and expert discovery.

### a.     Prinston's Reliance on a Parent Application Is Inappropriate

Prinston's prosecution history estoppel arguments hinge on alleged narrowing amendments and a statement from a parent application.  D.I. 15 at 7.  But amendments and "arguments made in a related application do not automatically apply to different claims in a separate application."  *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013) (declining to apply estoppel from parent application).  Here, the original claims in the parent application were different than those originally presented in the application that led directly to the '419 patent.  *Compare* D.I. 16: Ex. 2 at 33–35 (original pagination), *with* Ex. 7 (Original U.S. Patent Application No. 15/713,427) at 33–35.  Accordingly, Prinston's reliance on the parent application in this case is misplaced.  Moreover, to the extent the Court looks to the parent application, the Court should consider the totality of the prosecution with the assistance of expert testimony to determine to what extent, if any, the prosecution in the parent application bears on any doctrine of equivalents analysis related to the claims of the '419 patent.  *See Kyowa Hakko Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *6–7 (D. Del. Feb. 12, 2018); *Amgen Inc. v. Alkem Labs. Ltd.*, No.

17-CV-815, 2017 WL 6493150, at *2 (D. Del. Dec. 19, 2017).  Summary dismissal is therefore also inappropriate for this reason.

> **b.** **Prinston's Amendment-Based Estoppel Arguments Are Incorrect and Raise Disputed Issues of Material Fact**

Prinston's Rule 12(c) motion should also be denied because it fails to apply the required three-part test for amendment-based prosecution history estoppel and raises disputed issues of material fact inappropriate for resolution at the pleadings stage.  Amendment-based estoppel is assessed based on a "three-part, fact intensive framework."  *Amgen*, 2017 WL 6493150, at *2. First, the Court must determine if the amendment was narrowing.  *Id*. (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) ("*Festo II*")). Second, the Court must then determine if the amendment was made for reasons "substantially related to patentability."  *Id*. (citing *Festo II*, 344 F.3d at 1366).  If both requirements are met, then the Court must determine the "scope of the surrender resulting from the narrowing amendment." *Id*. (citing *Festo II*, 344 F.3d at 1367).  To do this, the Court needs to understand "which equivalents are in question."  *Id*.

Prinston has failed to establish that a narrowing amendment occurred.  *See* D.I. 7.  In the application that directly led to the '419 patent, original claim 1 recited HPC as a binder.  Ex. 7 (Original U.S. Patent Application No. 15/713,427) at 33.  The identity of the binder was not amended during prosecution.  *See* D.I. 1: Ex. G at 15:41–42.  There was thus no amendment from "cellulose derivative" to "HPC" in the application that became the '419 patent.  Even assuming it were proper to look to the parent application, original dependent claim 3 in the parent application recited HPC as a binder.  D.I. 16: Ex. 2 at 33:26.  Claim 3 was later rewritten as an independent claim.  D.I. 16: Ex. 3 at 3.  Conversion of dependent claims to independent claims does not necessarily constitute a narrowing amendment that precludes the doctrine of equivalents.  *See, e.g.*,

*Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 703–04 (Fed. Cir. 1990). Prinston has thus failed to demonstrate the existence of a narrowing amendment and no presumption of amendment-based estoppel applies.  *Festo I*, 535 U.S. at 741.

Prinston also has failed to show that the allegedly narrowing amendment was made for reasons substantially related to patentability.  Prinston simply states that the claims were amended "[f]ollowing a rejection."  D.I. 15 at 7.  But Prinston does not explain the rejection or how the alleged narrowing amendment overcame the rejection.  In fact, rewriting claim 3 in independent form did not lead to allowance.  *See* Ex. 8 (Aug. 10, 2015 Final Office Action) at 3–9.  Claims reciting HPC as a binder continued to be rejected throughout prosecution, including in the application that led directly to the '419 patent.  *E.g.*, Ex. 9 (Nov. 3, 2017 Non-Final Office Action) at 3–10.  Prinston has therefore failed to demonstrate that the allegedly narrowing amendment was for reasons substantially related to patentability, further undermining any presumption of estoppel.

Even if the Court were to find a narrowing amendment for reasons related to patentability had been made, such an amendment gives rise to a *rebuttable* presumption that applicant surrendered the equivalent in question.  *Festo I*, 535 U.S. at 740–41.  The presumption can be rebutted, for example, by showing the amendment bore no more than a tangential relation to the accused equivalent.  *Id.*  This exception, like "prosecution history estoppel [itself] is resistant to [] rigid legal formulae" and "must be decided in the context of the invention disclosed in the patent and the prosecution history."  *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1333 (Fed. Cir. 2019).

Because the '362 patent used to reject the original parent claims did *not* disclose ▉▉▉▉ (*see* D.I. 1: Ex. A at 17:17; Ex. 10 (Feb. 3, 2015 Non-Final Office Action) at 4), Plaintiffs should be permitted an opportunity to show, including with the assistance of expert analysis, that any

allegedly narrowing amendment bore "no more than a tangential relation" to ████████ used in Prinston's proposed generic products. *Lilly*, 933 F.3d at 1331–34 (finding presumption rebutted under the tangential exception where amendment was made to overcome prior art that did not disclose and was unrelated to the equivalent); *Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*, 517 F.3d 1364, 1378 (Fed. Cir. 2008) (finding the presumption rebutted when the cited prior art did not mention the accused equivalent); *Festo II*, 344 F.3d at 1370 (noting that expert discovery may be necessary to determine whether an amendment was tangential to the equivalent in question); *Kyowa*, 2018 WL 834583, at *6–7 (denying dispositive motion to permit Plaintiffs to fully develop their rebuttals to the presumption of estoppel with the benefit of a full record and expert analysis); *see also Liqui-Box Corp. v. Scholle IPN Corp.*, No. 19-cv-4069, 2020 WL 1491144, at *8 (N.D. Ill. Mar. 27, 2020) (denying dispositive motion when Plaintiff identified "conflicting evidence" from the prosecution history and argued amendment was tangential to equivalent in question).

Given these factual disputes, resolution at the pleadings stage is therefore inappropriate.

### c.   Prinston's Argument-Based Estoppel Arguments Are Without Merit and Raise Disputed Issues of Material Fact

Prinston has not shown a "clear and unmistakable" surrender of ████ by argument-based estoppel. Argument-based prosecution history estoppel "depends on what a competitor, reading the prosecution history, would reasonably conclude was given up by the applicant." *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1108 (Fed. Cir. 1996). Courts "do not presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006). Any surrender made during prosecution must be both "clear and unmistakable." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008)

(quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed. Cir. 2003)).  Further, the "totality of the prosecution history" must be evaluated, requiring consideration of the "sum of the patentees' statements during prosecution."  *Comp. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008).

Prinston has not explained how Applicant's single statement that "[t]here are unexpected benefits from the claim[ed] composition with hydroxypropyl cellulose as the binder" evinces a clear and unmistakable surrender of ████.  *See* D.I. 15 at 7.  That statement does not in any way disparage the ██████████████ used by Prinston.  D.I. 16: Ex. 3 at 8.  Nor does it amount to a clear and unmistakable disavowal of ████.

### d.      The Full Prosecution History Must Be Considered

A more fully developed record based on fact and expert discovery is needed for this Court to assess the "totality" of the prosecution history and its purported relevance, if any, to Prinston's non-infringement positions.  *Novartis AG v. Ezra Ventures, LLC*, No. 15-150-LPS, 2016 WL 5334464, at *3 (D. Del. Sept. 22, 2016) (denying Rule 12(c) motion because the "inquiries appear to raise fact issues (potentially requiring discovery and claim construction to resolve)"); *Insituform*, 99 F.3d at 1108.  Indeed, as this Court noted, "where the file history is highly technical and hotly disputed by the parties, the court should [not] non-suit the plaintiff."  *Amgen*, 2017 WL 6493150, at *2; *Kyowa*, 2018 WL 834583, at *6 ("[T]he scope of [prosecution history] estoppel depends on factual questions regarding the prosecution history, which may preclude a disposition of the issue not only on a motion to dismiss, but on summary judgment."); *see also Liqui-Box*, 2020 WL 1491144, at *8 ("[W]ithout the benefit of a more developed record, the court declines to decide whether the prosecution history of the [asserted patent] bars Plaintiff from relying on the doctrine of equivalents.").

III.     **Conclusion**

For all the reasons presented above, Plaintiffs respectfully request that the Court deny Prinston's Rule 12(c) motion.   As explained, Prinston's present motion is not limited to the pleadings, is legally unsupported and cannot be resolved as a matter of law because it raises several disputed issues of material fact.   Moreover, entertaining Prinston's motion at this early stage will not streamline this complex set of proceedings involving eighteen groups of defendants and will unnecessarily waste the Court's and the parties' resources without the benefit of a fully developed record.

                                                ASHBY & GEDDES

                                                */s/ Steven J. Balick*

*Of Counsel:*                                   _____
                                                Steven J. Balick (#2114)
James B. Monroe                                 Andrew C. Mayo (#5207)
Denise Main                                     500 Delaware Avenue, 8th Floor
Erin M. Sommers                                 P.O. Box 1150
C. Collette Corser                              Wilmington, DE 19899
Tyler B. Latcham                                (302) 654-1888
FINNEGAN, HENDERSON, FARABOW,                   sbalick@ashbygeddes.com
GARRETT & DUNNER, LLP                           amayo@ashbygeddes.com
901 New York Avenue, NW
Washington, DC 20001-4431                       *Attorneys for Plaintiffs Otsuka Pharmaceutical*
(202) 408-4000                                  *Co., Ltd. and H. Lundbeck A/S*

Dated:  July 27, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of July, 2020, the attached **PLAINTIFFS'**

**ANSWERING BRIEF IN OPPOSITION TO PRINSTON PHARMACEUTICAL, INC.'S**

**MOTION FOR JUDGMENT ON THE PLEADINGS** was served upon the below-named

counsel of record at the address and in the manner indicated:

Stamatios Stamoulis, Esquire                                    <u>VIA ELECTRONIC MAIL</u>
Stamoulis & Weinblatt LLC
800 North West Street, Third Floor
Wilmington, DE  19801

Shashank Upadhye, Esquire                                    <u>VIA ELECTRONIC MAIL</u>
UPADHYE CWIK LLP
135 S. LaSalle Street, Suite 1930
Chicago, IL 60606

*/s/ Steven J. Balick*
_____
Steven J. Balick