IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OTSUKA PHARMACEUTICAL CO., LTD. AND H. LUNDBECK A/S, <br><br> Plaintiffs, <br><br> v. <br><br> PRINSTON PHARMACEUTICAL INC., <br><br> Defendant. | C.A. No. 19-1956-LPS <br><br> ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |

**DEFENDANT PRINSTON PHARMACEUTICAL INC.'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

I. An Early Removal of the '419 Patent on the Merits Will Greatly Simplify This Case and Likely Lead to the Simplification of the Related Cases ....................................................... 1

II. Prinston's ANDA and the '419 Patent Prosecution History Are Both Integral to the Pleadings and Properly Considered................................................................................ 1

III. Prinston's ANDA Products Would Not Infringe the Claims of the '419 Patent, Literally or under the Doctrine of Equivalents............................................................................ 3

    A. There Is No Literal Infringement, because the Uncoated Tablets Prinston Defined in Its ANDA Do Not Contain "Binder (b), Which Is Hydroxypropyl Cellulose" ................ 3

    B. The Disclosure-Dedication Rule Bars any DOE Infringement Theory based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ................................ 4

        1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ................................ 4

        2. The Specific Disclosure of ▮▮▮▮▮▮▮▮▮ n the '419 Patent Is Intended to Encompass All Such Binders, Which Are Limited in Number .............................. 6

        3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Also Dedicated to the Public ........................... 7

    C. Prosecution History Estoppel Applies to Bar DOE Arguments on the "Binder (b)" Claim Element................................................................................................. 8

IV. Conclusion................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Coherus Biosciences Inc.*, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018) ........ 3

*Amgen Inc. v. Coherus Biosciences Inc.,* 931 F. 3d 1154, 1158-59 (Fed. Cir. 2019) ..................... 3

*AstraZeneca Pharm. LP v. Apotex Corp.*, 2010 WL 5376310 (D. Del. Dec. 22, 2010) ................. 3

*Biogen Intl. GmbH v. Banner Life Scis., LLC*, 424 F. Supp. 3d 303 (D. Del. 2020) ................ 2, 10

*Cumberland Pharm. Inc. v. Sagent Agila LLC*, 2013 WL 5913742 (D. Del. Nov. 1, 2013) .... 6, 10

*Eagle Pharm., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341 (D. Del. 2019) .................. 2, 3

*Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661 (1990) ................................................................ 2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ............................. 9

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*) ..... ....................................................................................................................................................... 9, 10

*In re Bendamustine*, 2015 WL 1951399 (D. Del. Apr. 29, 2015) .................................................. 6

*In re Burlington Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............................................... 3

*Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698 (Fed. Cir. 1990) .................. 8

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ............................................ 8

*PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353 (Fed. Cir. 2004) ...................... 7

*Recro Gainesville LLC v. Actavis Labs. FL, Inc.*, 2017 WL 1064883 (D. Del. Feb. 24, 2017) ..... 6

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309 (Fed. Cir. 2013) ........................... 8

**Statutes**

35 U.S.C. § 271(a) ..................................................................................................................... 2, 3

35 U.S.C. § 271(b) ..................................................................................................................... 2, 3

35 U.S.C. § 271(c) ..................................................................................................................... 2, 3

35 U.S.C. § 271(e)(2) ..................................................................................................................... 2

The '419 patent disclosed with specificity various alternatives to HPC as the "binder (b)." During prosecution, the applicant narrowed the claim scope and surrendered any equivalents to the HPC. Plaintiffs confirmed that they have no evidence of any literal infringement of the '419 patent by Prinston, and improperly went outside the pleadings, mischaracterized their own '419 patent and Prinston's ANDA, and misread case law. All of their arguments should be rejected.

I. **An Early Removal of the '419 Patent on the Merits Will Greatly Simplify This Case and Likely Lead to the Simplification of the Related Cases**

The '419 patent expires in late 2032, a full six and a half years later than the other four patents-in-suit. (D.I. 1, at ¶¶ 29, 34, 38, 42, 46; D.I. 3). The '419 patent is directed to a "tablet" (i.e. a drug formulation), rather than a chemical compound that serves as the active ingredient in such tablets. (D.I. 1, at ¶¶ 27, 32, 36, 40, 44). The removal of the '419 patent at the pleadings stage, therefore, would not only significantly change the parties' relative legal positions, but also remove an entire branch of discovery regarding tablet composition, tablet components, tablet design, and the inevitable discovery disputes pertaining to the same.

Plaintiffs have asserted the same five patents against "eighteen defendant groups." (D.I. 21, at 1). At least two defendants in related cases have also sought to remove the '419 patent based on their respective non-infringement positions. (Zenara Pharma, Case No. 19-cv-1938-LPS, D.I. 15; Optimus Pharma, No. 19-2008-LPS, D.I. 15). Others may follow if these Rule 12(c) motions are successful. At the very least, even if a defendant's current formulation (different from Prinston's) might be infringing, the Court's rulings could point to clear paths for product reformulation, to serve to remove this patent as a point of contention once and for all.

II. **Prinston's ANDA and the '419 Patent Prosecution History Are Both Integral to the Pleadings and Properly Considered**

Plaintiffs cite to a number of unreported decisions for the proposition that Prinston's ANDA is a "matter outside the pleadings." (D.I. 21, at 3-5). This District, however, has

1

considered the contents of drug applications in granting Rule 12(c) motions. *Biogen Intl. GmbH v. Banner Life Scis., LLC*, 424 F. Supp. 3d 303, 307 (D. Del. 2020); *Eagle Pharm., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 343 n.1 (D. Del. 2019). The test in this District is not whether an integral document was "appended" to a pleading or "produced." (D.I. 21, at 5). This Court has held that authentic documents upon which the complaint is based are properly considered for a Rule 12(c) motion "if attached to the complaint *or as an exhibit to the motion*." *Biogen v. Banner,* 424 F. Supp. 3d at 307 (emphasis added).

Here, Plaintiffs first referenced the filing of Prinston's ANDA and PIV certifications, to establish Hatch-Waxman case jurisdiction. (D.I. 1, at ¶¶ 19-21, 49-51). Plaintiffs then alleged infringement of the '419 patent by referencing Prinston's "generic products," which they believed Prinston would be "making, using, offering to sell," etc., upon the approval of ANDA No. 213587. (*Id.* at ¶ 111). Plaintiffs alleged that the generic products would "infringe one or more claims of the ''419 patent under *§ 271(a), either literally or under the doctrine of equivalents*," as well as § 271(b) and (c). (*Id.*) (emphasis added). Plaintiffs were not merely addressing the "highly artificial," jurisdiction-conferring act of infringement under 35 U.S.C. § 271(e)(2). *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990). Plaintiffs referred to the *products*, and infringement under § 271(a)-(c), based on the contents of Prinston's ANDA.

Plaintiffs now try to disavow their explicit reference to Prinston's ANDA and their reliance on its contents by admitting that they did not review Prinston's ANDA before filing their Complaint. (D.I. 21, at 4-5). Plaintiffs made baseless allegations that Prinston did not offer its ANDA prior to suit, which only serve to distract. (*Id.*).[1] The question is whether a plaintiff can gain a tactical advantage by admitting that it had not reviewed a document it relied on for its

---

[1] Prinston produced its ANDA to Plaintiffs during the pendency of this motion.

allegations of infringement?  The answer is "no."  A plaintiff cannot first base its claims on a document, then "prevent a court from looking at the texts of the documents," or "hide behind his complaint's characterization of those documents when the defendant offers the actual documents in his defense."  *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *AstraZeneca Pharm. LP v. Apotex Corp.*, 2010 WL 5376310, at *9 (D. Del. Dec. 22, 2010). Here, Plaintiffs made repeated references to the "generic products" in alleging infringement under § 271 (a)-(c).  (D.I. 1).  Plaintiffs have made Prinston's ANDA integral to their Complaint, and cannot be allowed to argue that the very foundation of their allegations of patent infringement is "outside the pleadings" and should not be looked at in deciding this motion.

Plaintiffs also argue that the prosecution history of the '419 patent is not integral.  (D.I. 21, at 6).  The relevant patent prosecution history not only should be considered, but also can be dispositive, at the pleadings stage.  *Amgen Inc. v. Coherus Biosciences Inc.*, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018), *aff'd*, 931 F.3d 1154 (Fed. Cir. 2019).

### III.   Prinston's ANDA Products Would Not Infringe the Claims of the '419 Patent, Literally or under the Doctrine of Equivalents

#### A.   The Uncoated Tablets Prinston Defined in Its ANDA Do Not Contain "Binder (b), Which Is Hydroxypropyl Cellulose"

Plaintiffs speculated that "a full infringement analysis" of the "entire ANDA, product samples and development documents" would be necessary to find evidence of literal infringement.  (D.I. 21, at 7).  However, and as Plaintiffs have noted in their own brief, courts in this District can grant Rule 12(c) motions based on "portions of [the] NDA."  (D.I. 21, at 5 (discussing *Eagle Pharms. v. Slayback Pharma*, 382 F. Supp. 3d 341)).  When a drug application directly addresses an issue of infringement, non-infringement can be found on that basis.  *Id*; *see also Amgen Inc. v. Coherus Biosciences Inc.,* 931 F. 3d 1154, 1158-59 (Fed. Cir. 2019).

An ANDA defines the product and can serve as a basis for finding non-infringement. *See Sunovion Pharms. Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1273 (Fed. Cir. 2013). Here, the formulation of the tablets is given in Prinston's ANDA. The "Qualitative and Quantitative Unit Composition of Brexpiprazole Tablets" section contains no "binder (b), which is hydroxypropyl cellulose," contrary to what the '419 patent claims require. (D.I. 16 Exh. 1, at 4). The "binder" in Prinston's proposed products is ▓▓▓▓▓▓▓▓▓▓ (*Id.*). The definition leaves no room for HPC binder: the specified ingredients add up to "100.0"% of the "core tablet," which is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*Id.* at 4-5).

Plaintiffs point to HPC present in ▓▓▓▓▓▓▓▓▓▓ coating materials Prinston uses. (D.I. 21, at 7). However, the independent claim 1 of the '419 patent requires "binder (b)" to be a part of "the uncoated tablet," and the independent claim 6 describes "forming [mixture including binder (b)] into a tablet form" *followed by* the step of preparing a "coating mixture." (D.I. 1 Exh. G, at col. 15, ll. 30-54; col. 16, ll. 25-36).

The definition of the Prinston ANDA products is clear and precludes any literal infringement of the '419 patent. Plaintiffs expressed their desire to go on a fishing expedition. (D.I. 21, at 7). In this case, such extensive "additional discovery" on product formulation, development, and samples, is unnecessary and a waste of resources. For this reason alone, Prinston respectfully requests that the Court consider and rule on its motion at the Court's earliest convenience and before substantial fact discovery commences.

    **B.**   **The Disclosure-Dedication Rule Bars any DOE Infringement Theory based on** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

        **1.**   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Plaintiffs made a procedurally improper and substantively unavailing doctrine of equivalents (DOE) argument that ▇▇▇▇ could "act as binder." (D.I. 21, at 8). Plaintiffs cited a Handbook of Pharmaceutical Excipients stating that ▇▇▇▇ could be used as a "binder" or a "filler." (*Id.* at n. 7; D.I. 22 Exh. 3, at 364). The Handbook is not integral to the pleadings and should be disregarded. The '419 patent describes and claims ▇▇ as an "excipient (a)," which is separate from the "binder (b)" component. (D.I. 1 Exh. G, at col. 4, ll. 1-35; cols. 15-16 (all claims)). Likewise, in Prinston's ANDA, ▇▇ is defined as a "filler," and not a "binder." (D.I. 16 Exh. 1, at 4). The Handbook's description of ▇▇ is more general. Even if the Handbook could be considered, the '419 patent itself and Prinston's ANDA both made clear that, for this case and this product, ▇▇▇▇ is only a generic and non-functional "excipient" or a "filler," and not acting as a functional "binder."

The ▇▇▇▇ DOE argument is unavailing in any event, for two separate reasons. Plaintiffs argue that the '419 patent does not disclose ▇▇▇▇ as "an alternative binder to HPC." (D.I. 21, at 8). The '419 patent, however, does disclose ▇▇▇▇ tablets, wherein ▇▇ is an inert filler and ▇▇ a binder, as an alternative to ▇▇ excipient and HPC binder-containing tablets. (D.I. 1 Exh. G, at col. 4, ll. 18-21, 33-42). The claim scope of the '419 patent cannot extend to Prinston's ▇▇▇▇ tablets under the disclosure-dedication rule.

Plaintiffs' new ▇▇▇▇ infringement theory would also vitiate the "binder (b)" claim element. The '419 patent claims a tablet comprising both an "excipient (a), which can be ▇▇" *and* a "binder (b), which is hydroxypropyl cellulose." (D.I. 1 Exh. G, at cols. 15-16). Plaintiffs are not allowed to rewrite the claims during litigation to remove the words "which is hydroxypropyl cellulose," and broaden the claim scope. *Cumberland Pharm.*

5

*Inc. v. Sagent Agila LLC*, 2013 WL 5913742, at *3 (D. Del. Nov. 1, 2013) (motion to dismiss granted based on the claim vitiation doctrine).

        **2.    The Specific Disclosure of ▮▮▮▮▮▮ in the '419 Patent Is Intended to Encompass All Such Binders, Which Are Limited in Number**

Plaintiffs caution against applying the disclosure-dedication rule to a general disclosure of "many thousands of cellulosic polymers." (D.I. 21, at 9 (quoting *Recro Gainesville LLC v. Actavis Labs. FL, Inc.*, 2017 WL 1064883, at *5 (D. Del. Feb. 24, 2017))). In *Recro*, the patent mentioned "cellulosic polymers generally" and certain types of cellulosic polymers. 2017 WL 1064883, at *5. The accused product in *Recro* used ethylcellulose, which is *not* included in the types of polymers disclosed in the patent. *Id.* Judge Sleet was "therefore persuaded . . . that, though those having skill in the art might recognize ethylcellulose as one choice of cellulosic polymer, the specification *actually leads one away from that choice*." *Id.* (emphasis added).

Plaintiffs' reference to *Recro* is counterproductive for their purpose. The holding of *Recro* is based on the patent disclosures "leading away," but the "binder (b)" disclosures in the '419 patent are specific and point directly to ▮▮▮▮▮▮ (D.I. 1 Exh. G, at col. 4, ll. 40-42). The '419 patent refers to ▮▮▮▮▮▮▮▮▮▮▮▮, but uses the signifier "such as" to include ▮▮▮▮▮▮ (*Id.*). The '419 patent used specific and inclusive language to disclose to the readers ▮▮▮▮▮▮▮▮▮▮ as binders.

The ▮▮▮▮ alternatives are also limited in number. Plaintiffs again improperly relied on an out-of-pleadings document. (D.I. 22 Exh. 4). The ▮▮▮▮ web page lists only 19 different ▮▮▮▮. (*Id.* at 2). The inclusive ▮▮▮▮ in the '419 patent does not involve "many thousands of cellulosic polymers." Instead of *Recro*, the situation here is similar to *In re Bendamustine*, 2015 WL 1951399, at *2 (D. Del. Apr. 29, 2015). In *In re*

6

*Bendamustine*, the disclosure of 21 alternative solvents was specific enough for the disclosure-dedication doctrine. (D.I. 21, at 10 n. 8).

3. , Are Also Dedicated to the Public

Plaintiffs point to ▆▆▆▆ and argue these could meet the "binder (b), which is HPC" claim limitation. (D.I. 21, at 10). Even if, *arguendo*, these ▆▆▆▆ could be treated as "binder (b)," Plaintiffs' DOE argument is nevertheless blocked by the disclosure-dedication rule. Both ▆▆▆ are specifically disclosed in the '419 patent as "binder (b)" examples. (D.I. 1 Exh. G, at col. 4, ll. 33-36). Plaintiffs argue that a *combination* of ▆▆▆ could survive the application of the disclosure-dedication doctrine. (D.I. 21, at 10). However, the '419 patent also discloses that "[t]hese binders (b) may be used singly or in a combination of two or more." (D.I. 1 Exh. G, at col. 4, ll. 51-52). This disclosure is "clear" and "precise."

Plaintiffs cite *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353 (Fed. Cir. 2004), but that case lends Plaintiffs no support. In *PCS Computer*, the Federal Circuit held that a disclosure of "molded plastic parts" are specific enough to dedicate to the public the use of plastic clip parts. *Id.* at 1360. "Plastic" could be any number of things, but the test is not how *many* alternatives were disclosed, but whether the disclosure is one of "specificity." *Id.* When "plastic and/or metal parts" were disclosed but only metal parts were claimed, the use of any plastic parts was dedicated to the public. *Id.* Similarly, when ▆▆▆ HPC, and the combinations thereof were disclosed, but only HPC was claimed, the use of any such ▆▆▆ as binders was dedicated to the public.

7

        **C.**      **Prosecution History Estoppel Applies to Bar DOE Arguments on the "Binder (b)" Claim Element**

Prinston's amendment-based estoppel argument is based on a narrowing amendment during the prosecution of the parent application to the '419 patent. (D.I. 15, at 7). Plaintiffs cite to *Trading Techs.* for the proposition that "arguments made in a related application do not automatically apply to different claims in a separate application," without pointing out for the Court that *Trading Techs.* involved a continuation-*in-part* application that added "extensive disclosures," and "those subsequent disclosures *directly contradict* the [earlier] prosecution-based surrenders of claim scope." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013) (emphasis in the original). Here, however, the prosecution of the '419 patent involved a string of *continuation applications* during which no new material can be added. (*See* D.I. 1 Exh. G, at face page, field (63)). Furthermore, both the parent application and the direct application for the '419 patent recite the "binder (b)" element. (D.I. 16 Exh. 2, at Page 035; D.I. 16 Exh. 3, at 3; D.I. 22 Exh. 7, at 33). "In general, the prosecution history regarding a particular limitation in one patent is presumed to inform the later use of that same limitation in related patents, 'unless otherwise compelled.'" *Trading Techs.*, 728 F.3d at 1323 (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003)).

Plaintiffs then made the argument that, "[c]onversion of dependent claims to independent claims does not necessarily constitute a narrowing amendment that precludes the doctrine of equivalents." (D.I. 21, at 12-13). Plaintiffs reached back to 1990, pre-*Festo*, to find case support. (*Id.* at 13 (citing *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 703-04 (Fed. Cir. 1990) (panel decision))). However, post-*Festo* the Federal Circuit sitting *en banc* "[held] that the rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution estoppel."

8

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004) (*en banc*). "[T]he Supreme Court held that the proper focus is whether the amendment narrows the overall scope of the claimed subject matter." *Id.* at 1141 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736-37 (2002)). Accordingly, using a narrower rewritten claim to replace a broader original independent claim generates "a clear surrender of subject matter." *Id.* at 1143. When such a surrender happened, "[e]quivalents are presumptively not available with respect to that added limitation." *Id.* at 1144.

During the prosecution of the parent application to the '419 patent, the applicants cancelled the broadest claim 1, which does not have a "binder (b)" claim limitation, and rewrote a narrower dependent claim 3 into independent form, during which process added "binder (b), which is HPC" claim limitation to the new independent claim. Under *Honeywell*, this maneuver created "a clear surrender of subject matter," which rendered equivalents "presumptively not available" with respect to the added "binder (b), which is HPC" limitation. (D.I. 16 Exh. 2, Page 035 (original parent application claims 1-3); D.I. 16 Exh. 3, at 3 (cancelling independent claim 1 and dependent claim 2, and rewrote dependent claim 3 into independent form)). The "clear surrender" rendered equivalents—any equivalents—not available with respect to the "binder (b)" claim limitation. *Honeywell*, 370 F.3d at 1144.

Plaintiffs urge the Court to allow them to "show, including with the assistance of expert analysis, that any allegedly narrowing amendment bore 'no more than a tangential relation' to ▮▮▮▮▮ used in Prinston's proposed generic products."[2] (D.I. 21, at 13-14). However, unlike

---

[2] One also wonders why, exactly, the applicants asserted "unexpected results" at the same time they made the narrowing amendment if not to overcome an obviousness rejection, as such secondary considerations are only relevant in patent prosecution to overcome a *prima facie* case of obviousness. *See* D.I. 16 Exh. 3. Expert testimony on this topic is futile and unnecessary.

9

the prosecution history of the '419 patent, none of the cases Plaintiffs cited involved a *Honeywell*-like situation, which by law should lead to "a clear surrender," and render "equivalents presumptively not available with respect to that added limitation." *Honeywell*, 370 F.3d at 1144.  Furthermore, decisions from this Court have shown that a purported need for "expert analysis" does not bar a non-infringement determination at the pleadings stage, when the scope of the claims is clear.  *See Cumberland Pharm.*, 2013 WL 5913742, at *3 (motion to dismiss granted when DOE was deemed unavailable due to claim vitiation); *Biogen*, 424 F. Supp. 3d at 315 (granting a motion for judgment on the pleadings of no infringement under the DOE in a situation "analog[ous] to prosecution history estoppel").

Plaintiffs' attempt to parse the amendment of the claim and accompanying remarks into two separate arguments is not well-grounded, either.  Prinston did not argue that the statements made in the prosecution history alone were sufficient to estop Plaintiffs from application of the doctrine of equivalents.  Rather, arguments made by the applicant <u>confirm</u> that the applicant intended to claim HPC, and only HPC, as the "binder (b)."  In addition to the narrowing amendment to "binder (b) which is HPC," (D.I. 16 Exh. 3, at 3), the applicant also stated that "[t]here are unexpected benefits from the claims composition with hydroxypropyl cellulose as the binder." (*Id.* at 8).  Thus, the applicant both narrowed the binder to HPC and specifically asserted that use of HPC as the binder yielded unexpected results.  That combination shows a clear intent.  Indeed, the "totality of the prosecution history" proves that the patentee intended to claim HPC and only HPC as the "binder (b)."

## IV.  Conclusion

For the reasons above and in Prinston's opening motion brief, Prinston respectfully requests that the Court grant its motion for judgment on the pleadings of non-infringement of the '419 patent, at the Court's earliest convenience.

Dated: August 3, 2020

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

/s/ _____
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540 – Ext.1
stamoulis@swdelaw.com

Shashank Upadhye (*pro hac vice*)
Yixin Tang (*pro hac vice*)
Brent Batzer (*pro hac vice*)
**UPADHYE CWIK LLP**
135 S. LaSalle St., Suite 1930
Chicago, IL 60606
Tel: 312.598.2610
shashank@ipfdalaw.com

*Attorneys for Defendants*